SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
   A Limited Liability Partnership
   Including Professional Corporations
PAUL S. COWIE, Cal. Bar No. 250131
BRIAN S. FONG, Cal. Bar No. 262846
AMANDA E. BECKWITH, Cal. Bar No. 312967
VICTORIA B. AYENI, Cal. Bar No. 335233
Four Embarcadero Center, 17th Floor
San Francisco, California 94111-4109
Telephone:    415.434.9100
Facsimile:    415.434.3947
E mail    pcowie@sheppardmullin.com
    bfong@sheppardmullin.com
    abeckwith@sheppardmullin.com
    vayeni@sheppardmullin.com

Attorneys for Defendant
HEALTHSOURCE GLOBAL STAFFING, INC.

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PATRICIA LOUIS and MORGAN MURRAY, on behalf of themselves and others similarly situated,<br><br>    Plaintiff,<br><br>    v.<br><br>HEALTHSOURCE GLOBAL STAFFING, INC., a California corporation; and DOES 1 through 50, inclusive,<br><br>    Defendants. | Case No.<br><br>[Alameda County Superior Court Case No. 21CV004391]<br><br>**DEFENDANT HEALTHSOURCE GLOBAL STAFFING, INC.'S NOTICE OF REMOVAL OF CIVIL ACTION TO FEDERAL COURT PURSUANT TO THE CLASS ACTION FAIRNESS ACT 28 U.S.C. §§ 1332(d)(2) and 1453**<br><br>Complaint Filed:  December 20, 2021<br>FAC Filed:  March 15, 2022<br>Trial Date:  None Set |

**TO THE CLERK OF THE ABOVE-ENTITLED COURT, PLAINTIFF AND HIS ATTORNEY OF RECORD:**

PLEASE TAKE NOTICE that Defendant Healthsource Global Staffing, Inc. ("Defendant" or "HSG") hereby removes the above-entitled action, Case No. 21CV004391, from the Superior Court of California, County of Alameda, to the United States District Court for the Northern District of California. This Court has original subject matter jurisdiction over Plaintiffs Patricia Louis and Morgan Murray's ("Plaintiffs") lawsuit under the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. §§ 1332(d)(2) and 1453, because minimum diversity exists and the amount in controversy exceeds $5,000,000. Accordingly, removal is proper based on the following grounds:

## CLAIMS AND PROCEDURAL HISTORY

1. On or about December 20, 2021, individually and on behalf of all other purportedly similarly situated non-exempt, hourly employees, Plaintiffs Patricia Louis and Morgan Murray filed a putative class action complaint against Defendant in the Superior Court of the State of California, County of Alameda, Case No. 21CV004391 (the "Complaint"). On December 21, 2021, Plaintiffs served a copy of the Complaint, Summons, and Civil Case Cover Sheet on Defendant. Attached hereto as **Exhibits A–C** are true and correct copies of the Complaint, Summons, and Civil Case Cover Sheet.

2. On or about December 20, 2021, the Court issued a Notice of Case Management Conference on April 19, 2022. Attached hereto as **Exhibit D** is a true and correct copy of the Notice of Case Management Conference.

3. On January 12, 2022, the Alameda Superior Court, on its own motion, rescheduled the Complex Determination Hearing to March 15, 2022. This is on the civil case docket and part of the record, but the Notice of Case Rescheduling was not served on HSG.

4. On or about February 8, 2022, Defendant filed its Answer to the Complaint in Alameda County Superior Court and served its Answer on Plaintiff that same day. Attached hereto as **Exhibit E** is a true and correct copy of Defendant's Answer to the Complaint.

5. On or about March 1, 2022, Plaintiff and Defendant entered into a stipulation permitting Plaintiff to file a First Amended Complaint ("FAC"). On March 9, 2022, the Court

entered an Order granting the parties' stipulation. Attached hereto as **Exhibits F-H** are true and correct copies of the Stipulation, Order, and Proof of Service.

6. On or about March 15, 2022, Plaintiffs filed their FAC, adding a claim under the Private Attorneys General Act ("PAGA"). Attached hereto as **Exhibit I** is a true and correct copy of the FAC.

7. Defendant understands a Complex Case Determination hearing was conducted in Department 23 of the Alameda County Superior Court on March 15, 2022, at which time the Alameda County Superior Court designated Case No. 21CV004391 a complex case pursuant to Cal. Rules of Court, Rule 3.400. The Minutes are listed on the docket but were not served on HSG. Attached hereto as **Exhibit J** is a copy of the Order from the Complex Determination Hearing.

8. On or about March 15, 2022, the Court issued an Initial Case Management Order. Attached hereto as **Exhibit K** is a copy of the Initial Case Management Order.

9. On March 24, 2022 Defendant filed a peremptory strike of the assigned judge under California Code of Civil Procedure § 170.6. Attached hereto as **Exhibit L** is a copy of Defendant's filing.

10. On April 5, 2022, the Court issued a Notice of Case Reassignment. Attached hereto as **Exhibit M** is a copy of the Notice.

11. On April 18, 2022, Defendant filed its Answer to Plaintiffs' FAC. Attached hereto as **Exhibit N** is a copy of Defendant's Answer to Plaintiffs' FAC.

12. The FAC asserts class claims for relief arising out of Plaintiffs' alleged employment with HSG to replace striking healthcare workers at healthcare facilities in California. Plaintiffs assert class claims for: (1) failure to pay all wages owed under Labor Code §§ 200, 223, 226, 500, 1197, 1198, and the applicable California Industrial Welfare Wage Orders; (2) failure to pay minimum wages for all hours worked under Labor Code §§ 1194 and 1197 and the Applicable Wage Orders; (3) failure to pay overtime for all overtime hours worked under Labor Code §§ 510, 1194, and the Applicable Wage Orders; (4) failure to provide meal periods under Labor Code §§ 512, 226.7, and the Applicable Wage Orders; (5) failure to provide rest periods under Labor Code § 226.7 and the Applicable Wage Orders; (6) failure to reimburse all business-related expenditures under

1  Labor Code § 2802; (7) failure to provide complete and accurate itemized wage statements under Labor Code § 226(a) and the Applicable Wage Orders; (8) failure to timely pay all final wages under Labor Code §§ 201, 202, and 203; (9) failure to pay all owed wages on regular paydays under Labor Code § 204, and penalties owed under Labor Code § 210; (10) unfair competition under Business and Professions Code §§ 17200, *et. seq.*; and (11) civil penalties under PAGA, Labor Code §§ 2698 *et seq.*

13. Plaintiffs seek to represent a putative class of "[a]ll of Defendant's non-exempt employees who were assigned to work for any of its clients engaged in a labor dispute inside California during the applicable recovery period."[1] (FAC, ¶ 26). Plaintiff defines the class period as four years prior to the filing of this action, or December 20, 2017 to the present ("Class Period"). (FAC, ¶ 25).

14. A copy of this Notice of Removal will be served on Plaintiffs and filed with the Superior Court of California for the County of Alameda. **Exhibits A–N** contain all process, pleadings, and orders served on Defendant in accordance with 28 U.S.C. § 1446(a). No other proceedings have been held in this action.

### DIVERSITY JURISDICTION UNDER CLASS ACTION FAIRNESS ACT

15. The Court has original jurisdiction over this action under the Class Action Fairness Act of 2005 ("CAFA"), codified in relevant part at 28 U.S.C. § 1332(d)(2). As set forth below, this action is removable under CAFA, pursuant to the provisions of 28 U.S.C. §1441(a), as (1) the proposed class contains at least 100 members; (2) Defendant is not a state, state official or other governmental entity; (3) the total amount in controversy for all class members exceeds $5,000,000; and (4) there is diversity between at least one class member and one defendant.

16. Pursuant to *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547 (2014) and 28 U.S.C. § 1446(a), Defendant is not required to submit evidence establishing jurisdictional facts with a notice of removal. Defendant is only required to submit a "short and plain statement of the grounds for removal." 28 U.S.C. § 1446(a). A plausible allegation of the relevant

---

[1] Defendant does not admit that this class, or any putative class, is properly defined, or otherwise ascertainable.

jurisdictional facts is sufficient in a notice of removal. *Dart Cherokee*, 135 S.Ct. 547 at 554. Evidence is required only if the plaintiff contests, or the Court questions, Defendant's allegations. *Id.*

## **MINIMUM DIVERSITY EXISTS**

17. CAFA's minimal diversity requirement is satisfied when: (1) at least one plaintiff is a citizen of a state in which none of the defendants are citizens; (2) at least one plaintiff is a citizen of a foreign state and one defendant is a U.S. citizen; or (3) at least one plaintiff is a U.S. citizen and one defendant is a citizen of a foreign state. *See* 28 U.S.C. § 1332(d).

18. For diversity purposes, a corporation is deemed to be a citizen of the state in which it has been incorporated and the state where it has its principal place of business. 28 U.S.C. § 1332(c)(1). In *Hertz Corp. v. Friend*, 559 U.S. 77, 92–93 (2010), the Supreme Court clarified the definition of a corporation's "principal place of business" and concluded that that "'principal place of business' is best read as referring to the place where a corporation's officers direct, control, and coordinate the corporation's activities." The Supreme Court further clarified that, "in practice" the principal place of business "should normally be the place where the corporation maintains its headquarters—provided that the headquarters is the actual center of direction, control, and coordination." *Id.* at 93.

19. As part of its core business, HSG recruits and hires healthcare professionals from all over the United States to staff hospitals during labor disputes between such a hospital and its employees' unions. HSG is incorporated in the State of California with its principal place of business in California and Texas. HSG's corporate and executive officers are employed in California and, as a wholly owned subsidiary of AMN Healthcare, Inc., its administrative functions (including operations and planning), are conducted in California and Texas. California and Texas are also where the actual direction, control and coordination for HSG take place. HSG's corporate headquarters in California is the actual center of direction, control and coordination of all major human resources and administrative functions; the respective corporate officers for these functions work in California and Texas and are responsible for developing policies and protocols for HSG's operations. HSG's "nerve center" is in California and Texas, rendering HSG a California and Texas

citizen for purposes of diversity. These facts were true at the time the Complaint was filed, and remain true today at the time of removal to federal court. Thus, HSG is deemed a citizen of California and Texas for the purposes of removal.

20. To establish citizenship for diversity purposes, a natural person must be both (a) a citizen of the United States, and (b) a domiciliary of one particular state. *Kantor v. Wellesley Galleries, Ltd.*, 704 F.2d 1088, 1090 (9th Cir. 1983). Residence is *prima facie* evidence of domicile. *State Farm Mut. Auto Ins. Co. v. Dyer*, 19 F.3d 514, 520 (10th Cir. 1994). According to Plaintiffs' home mailing address information, Plaintiff Louis resides in Florida, and Plaintiff Murray resides in Maryland.[2] Therefore, at the date on which this civil action was filed, and at the time of this removal, at least one member of the putative class was not a citizen of California.

21. The presence of "Doe" defendants has no bearing on diversity with respect to removal. *See* 28 U.S.C. § 1441(b). Regardless, pursuant to CAFA, Defendant is not required to obtain the consent of any other defendant to remove this action. 28 U.S.C. § 1453(b).

### THE PROPOSED CLASS CONTAINS AT LEAST 100 MEMBERS

22. Defendant HSG employed approximately 3,608 putative class members who worked at least one day in California during the four-year period prior to the filing of the Complaint.

23. Accordingly, the putative class meets CAFA's requirement of a class containing at least 100 members.

### THE AMOUNT IN CONTROVERSY EXCEEDS $5,000,000

24. Pursuant to CAFA, the amount in controversy is satisfied when the aggregated claims of the individual members in a class action exceed the sum of $5,000,000. *See* 28 U.S.C. § 1332(d)(6). A defendant is not obliged to "research, state, and prove the plaintiff's claims for

---

[2] According to home mailing address information provided by the putative class members when applying for employment with HSG, the putative class members reside in Alaska, Alabama, Arkansas, Arizona, California, Colorado, Connecticut, Washington D.C., Delaware, Florida, Georgia, Hawaii, Iowa, Idaho, Indiana, Illinois, Idaho, Kansas, Kentucky, Louisiana, Maine, Maryland, Massachusetts, Michigan, Minnesota, Missouri, Mississippi, Montana, North Carolina, North Dakota, New Hampshire, New Jersey, New Mexico, New York, Ohio, Oklahoma, Oregon, Pennsylvania, South Carolina, South Dakota, Tennessee, Texas, Utah, Virginia, Washington Wisconsin, and Wyoming.

damages." *McCraw v. Lyons*, 863 F. Supp. 430, 434 (W.D. Ky. 1994).  A defendant can establish the amount in controversy by setting forth a plausible allegation in the notice of removal that the amount placed in controversy by Plaintiff exceeds the jurisdictional minimum. *See Dart Cherokee*, 135 S. Ct. at 554 (holding that "a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold" and evidentiary submissions are required only if "the plaintiff contests, or the court questions, the defendant's allegations").  "In measuring the amount in controversy, a court must 'assume that the allegations of the complaint are true and assume that a jury [will] return[] a verdict for the plaintiff on all claims made in the complaint.'"  *Kenneth Rothschild Tr. v. Morgan Stanley Dean Witter*, 199 F. Supp. 2d 993, 1001 (C.D. Cal. 2002) (quoting *Jackson v. American Bankers Ins. Co. of Florida*, 976 F. Supp. 1450, 1454 (S.D. Ala. 1997).  "The ultimate inquiry is what amount is put 'in controversy' by the plaintiff's complaint, not what a defendant will *actually* owe." *Muniz v. Pilot Travel Centers LLC*, 2007 WL 1302504, at *3 (E.D. Cal. 2007) (original emphasis); *see also Coleman v. Estes Express Lines, Inc.*, 730 F. Supp. 2d 1141, 1148 (C.D. Cal. 2010) ("In deciding the amount in controversy, the Court looks to what the plaintiff has alleged, not what the defendants will owe.").

25.     As relevant here, HSG employs putative class members in temporary positions at hospitals in California that are experiencing an organized labor stoppage.  On average, labor stoppages last approximately five days.  Once an assignment to work a labor stoppage ends, the putative class members remain employed with HSG, although they do not actively work until they accept the next assignment to work a labor stoppage.  Consequently, some putative class members, like Plaintiffs here, have worked with HSG on multiple assignments during the Class Period, because they worked during more than one labor stoppage. During the Class Period, Plaintiff Louis worked two assignments with HSG, and Plaintiff Murray worked at least three assignments with HSG.  According to HSG's information pertaining to strikes worked, there were approximately 4,300 total assignments worked during the Class Period.

26.     During the Class Period, the putative class members earned an average of $80.00 per hour. During the Class Period, Plaintiffs and the putative class members typically worked shifts of at least 12 hours per day.  (FAC, ¶¶ 12-13.)  Accordingly, on average, each putative class member

earned $1,120 per day ($80/hour x 8 hours + $120/hour x 4 hours) for each day the putative class member worked on assignment for HSG.

27. Plaintiffs allege that Defendant required Plaintiffs and putative class members to use company-provided transportation to and from their assigned jobsites because, among other reasons, crossing active, or potential, picket lines without the protection of company-provided shuttles would seriously jeopardize their health and safety. (FAC, ¶ 15). Plaintiffs allege that because they and the putative class members were not reimbursed for the cost of a vehicle that they would be required to rent in order to commute to work themselves, using company-provided transportation to get to and from jobsites was compulsory for the putative class members. (*Id.*) Plaintiffs allege that Defendant had a pattern and practice of not paying Plaintiffs and the putative class members for their transportation time, and the associated wait time spent traveling at Defendant's direction. (FAC, ¶ 16).

28. Based on Plaintiffs' allegations, and for purposes of this removal only, HSG estimates that putative class members typically spent a total of approximately one hour each assignment of unpaid straight time, and one hour of unpaid overtime waiting for company-provided transportation every day, using company-provided transportation to travel to the assignments, and waiting for other class members to arrive at the designated pick-up locations. (FAC, ¶ 16). Thus HSG estimates that for each assignment worked, putative class members worked an additional one hour of unpaid straight time and one hour of unpaid overtime. Plaintiffs also allege that they and the putative class worked at least 12-hour days and thus unpaid overtime must be paid at double time rates given putative class members' long shifts. (FAC, ¶¶ 12-13, 16).

29. Plaintiffs also allege that they and the putative class members were not provided with meal periods of at least 30 minutes before the fifth hour of work and were not provided with 10-minute rest periods. (*Id.* ¶ 17).

30. Plaintiffs further allege that HSG failed to pay them and the putative class members their non-discretionary bonuses. (FAC, ¶ 18).

31. Without making any admission of liability or damages, with respect to any aspect of this case, or to the proper legal test(s) applicable to Plaintiffs' substantive and class allegations, and

without waiving the right to compel Plaintiffs' claims to binding individual arbitration, or any other affirmative defenses, the alleged amount in controversy in this class action exceeds, in the aggregate, $5,000,000, as follows:

32. **Plaintiffs' Eighth Claim for Waiting Time Penalties Under Labor Code § 203:** Plaintiffs allege that HSG failed to pay timely wages to Plaintiffs and all putative class members upon separation of employment, for which HSG is liable for waiting time penalties equal to one workday's wages for each day the wages were not paid, up to a maximum of 30 days' wages. (*Id.* ¶ 71–75). Although HSG still considers Plaintiffs employees between assignments, Plaintiffs allege that they were separated after each assignment, and that HSG failed to timely pay their final wages for all hours worked and wages earned, including overtime and double-time pay and non-discretionary bonuses. (FAC, ¶ 75). Thus, Plaintiffs claim that each assignment worked represents a separate employment, requiring the payment of final wages. HSG alleges there were at least approximately 2,260 separate assignments worked by putative class members during the three-year period prior to the filing of the Complaint. Should Plaintiffs prevail on this claim, and conservatively assuming a 25% violation rate, alleged waiting time penalties on behalf of themselves and putative class members would amount to approximately **$18,984,000** ($1,120 per day x 30 days x 2,260 total assignments worked x 25%).

33. HSG alleges that the amount placed in controversy by Plaintiffs' class claims easily exceeds $5,000,000 based on their estimated claimed damages for waiting time penalties alone. But even assuming otherwise, Plaintiffs' alleged amount in controversy for all the claimed damages meets the required threshold necessary to support federal jurisdiction under CAFA, as set forth below.

34. **Plaintiffs' First Claim for Failure to Pay All Wages Owed, Second Claim for Failure to Pay Overtime, and Third Claim for Failure to Pay Minimum Wage:** Plaintiffs allege HSG failed to pay Plaintiffs and putative class members for their transportation time, and the associated wait time, despite being allegedly under Defendant's control during the entirety of that time. (FAC, ¶ 16). Plaintiffs also allege that some of the unpaid time must have allegedly been paid at double-time rates given Plaintiffs' long shifts. (*Id.*). Should Plaintiffs prevail on this claim on

behalf of themselves and the putative class members they seek to represent, unpaid straight time wages would amount to approximately **$344,000** ($80/hour x 1 hour allegedly unpaid time per assignment worked x 4,300 total assignments worked) and approximately **$516,000** ($120/hour average overtime rate[3] x 1 hour of unpaid overtime per each assignment x 4,300 total assignments worked).

35. Plaintiffs also seek liquidated damages for failure to pay minimum wages. (*Id.* ¶¶ 36, 48). Thus, should they prevail on this claim, damages for this claim would amount to liquidated damages of $**94,600** ($11.00/hour[4] minimum wage x 2 hours unpaid time per each assignment x 4,300 total assignments worked)).

36. Plaintiffs also allege that HSG failed to pay Plaintiffs and putative class members their earned non-discretionary bonuses. (FAC, ¶¶ 18–20). Specifically, Plaintiffs allege that HSG promised to pay, and did not pay, a $2,800 bonus to Plaintiff Louis and a $950 bonus to Plaintiff Murray for completing onsite orientations, traveling to worksites, and maintaining qualifications to work a strike. (FAC, ¶¶ 19–20). Assuming HSG failed to pay bonuses of $950 to 25% of the putative class, should Plaintiffs prevail on this claim, damages for this claim would amount to **$855,000** in allegedly unpaid bonuses to the putative class. Thus, should Plaintiffs prevail on their claims for unpaid wages, minimum wages, and overtime, unpaid wages would amount to approximately **$1,809,600**.

37. **Plaintiffs' Fourth Claim for Failure to Provide Meal Periods:** Plaintiffs allege HSG, "from time to time," failed to provide putative class members with required meal periods without paying the requisite missed meal period premium of one additional hour of pay. (*Id.* ¶¶ 17,

---

[3] Plaintiffs allege that they generally worked 12-hour shifts. (FAC, ¶¶ 12–13.) Thus, the time spent waiting for the shuttle and traveling to and from the worksite would exceed 12 hours in one day, and thus paid at double the hourly rate. Nonetheless, HSG conservatively uses overtime rate of 1.5 times the average hourly rate in its calculations, based on Plaintiffs' allegation that Plaintiffs and the putative class "worked in excess of 8 hours in a workday, 12 hours in a workday, and/or 40 hours in a workweek" during the class period. (FAC ¶ 40.)

[4] The California Minimum Wage rate as of January 1, 2018, was 11.00/hour for employers with 26 employees or more. Thus, HSG assumes, conservatively, that the minimum wage for putative class members was $11.00/hour.

52–54). California law requires employers to pay employees one additional hour of pay at the employees' regular rate of compensation for each workday a meal period that is required to be provided is not provided. Cal. Labor Code § 226.7. California law requires provision of meal breaks to non-exempt employees who work more than five hours in a workday. Cal. Labor Code § 512. Assuming, conservatively, that putative class members on average were not provided two meal periods during each five-day assignment that they worked and did not receive corresponding meal period premiums, should Plaintiffs prevail on this claim on behalf of themselves and putative class members, alleged missed meal period premiums would amount to approximately **$688,000** ($80 average hourly pay as a missed meal period premium x 2 missed meal periods per assignment x 4,300 total assignments worked).

38. **Plaintiffs' Fifth Claim for Failure to Provide Rest Periods:** Plaintiffs allege HSG "from time to time" failed to provide putative class members with rest periods without paying them the requisite missed rest period premium of one additional hour of pay. (*Id.* ¶¶ 55–60). Plaintiffs allege that they and the putative class members occasionally worked in excess of four-hour work periods, or a fraction thereof, without being authorized or permitted to take their first, second, third, and/or fourth rest breaks. (*Id.* ¶ 59). California law requires employers to pay employees one additional hour of pay at the employees' regular rate of compensation for each workday a rest period that is required to be provided is not provided. Cal. Labor Code § 226.7. Assuming that, as Plaintiffs allege, putative class members, typically were not provided two rest periods during each five-day assignment and did not receive corresponding rest period premiums, should Plaintiffs prevail on this claim on behalf of themselves and putative class members, alleged missed rest period premiums would amount to approximately **$688,000** ($80 average hourly pay as a missed rest period premium x 2 missed rest periods per assignment x 4,300 total assignments worked).

39. **Plaintiffs' Sixth Claim for Failure to Reimburse Business-Related Expenditures:** Plaintiffs allege HSG maintained a policy and practice "from time to time" of not reimbursing Plaintiffs and putative class members for expenses incurred for meals, incidentals, and luggage expenses. (*Id.* ¶¶ 21, 63, 87, Ex. 1 at 8). Conservatively assuming that putative class members, on average, spent $25 per assignment on unreimbursed meals and incidentals, should

-10-
SMRH:4886-0679-1958.4   DEFENDANT'S NOTICE OF REMOVAL OF CIVIL ACTION TO FEDERAL COURT
Case No.

Plaintiffs prevail on this claim on behalf of themselves and putative class members, unreimbursed business expenses would amount to approximately **$107,500** ($25/assignment in expenses x 4,300 total assignments worked).

40. **Plaintiffs' Seventh Claim for Failure to Furnish Accurate Wage Statements:** Plaintiffs allege that HSG knowingly and intentionally failed to provide to Plaintiffs and putative class members accurate written wage statements. (*Id.* ¶¶ 66–70). Plaintiffs seek damages of $50 for each putative class members' first inaccurate wage statement, and $100 for each subsequent inaccurate wage statement. (*Id.* ¶ 70). Assuming putative class members were only issued one wage statement, HSG conservatively estimates that approximately 1,775 wage statements were issued during the one-year period before the filing of the Complaint. Should Plaintiffs prevail on this claim on behalf of themselves and putative class members, and conservatively assuming only a $50 penalty per wage statement, alleged damages would amount to approximately **$88,750** ($50 x 1,775 wage statements).

41. **Plaintiffs' Ninth Claim for Failure to Pay All Owed Wages on Regular Pay Days**: Plaintiffs allege that HSG failed to pay all owed wages on regular pay days, including those wages for hours worked, bonuses earned, and meal and rest break premium wages owed to them. (FAC, ¶¶ 76–80). California law requires employers to pay employees twice during each calendar month all wages earned and owed, on days designated in advance by the employer as the regular paydays. Cal. Labor Code § 204(a). Thus, Plaintiffs allege that they and putative class members are owed penalties of $100 for the initial violation and $200 for each subsequent violation, plus 25% of the wages HSG allegedly withheld from Plaintiffs and putative class members. (*Id.* ¶ 80). Should Plaintiffs prevail on this claim on behalf of themselves and putative class members, and conservatively assuming only a $100 penalty per missed pay period for the initial violation, alleged damages would amount to approximately **$430,000** ($100 x 4,300 missed pay days).

42. Adding up these different items demonstrates that in filing this putative class action, Plaintiffs have placed at least **$22,408,850** in controversy on their alleged claims, not including attorneys' fees.

43.     **Plaintiffs' Claim for Attorneys' Fees:** For purposes of federal subject matter jurisdiction, "[t]he amount in controversy includes the amount of damages in dispute, as well as attorneys' fees, if authorized by statute or contract." *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1155–56 (9th Cir. 1998).  The Ninth Circuit has held "that attorneys' fees were properly included in the amount in controversy in a class action." *Lowdermilk v. United States Bank Nat'l Assoc.*, 479 F.3d 994, 1000 (9th Cir. 2007) (abrogated on other grounds *by Standard Fire Ins. Co. v. Knowles*, 568 U.S. 558 (2013)).  In *Fritsch v. Swift Transp. Co. of Ariz., LLC*, 899 F.3d 785, 794 (9th Cir. 2018), the Ninth Circuit held that future attorneys' fees that are claimed, but not accrued at the time of removal, must be considered in the amount in controversy.  Plaintiffs' causes of action permit Plaintiffs to recover attorneys' fees.  *See* Cal. Lab. Code §§ 226 & 1194; *Klein v. City of Laguna Beach*, 810 F.3d 693, 701 (9th Cir. 2016) ("[F]ederal courts apply state law for attorneys' fees to state claims because of the *Erie* doctrine.").  Although not a per se rule (*see Fritsch*, 899 F.3d at 796, n.6), courts may use a 25% benchmark when calculating the attorneys' fees in controversy, including for claims arising under state law.  *Rodriguez v. Cleansource, Inc.*, 2014 WL 3818304, at *4 (S.D. Cal. 2014); *Marshall v. G2 Secure Staff, LLC*, 2014 WL 3506608 (C.D. Cal. 2014); *Jasso v. Money Mart Exp., Inc.*, 2012 WL 699465 (N.D. Cal. 2012); *see also Garibay v. Archstone Communities LLC*, 539 F. App'x 763, 764 (9th Cir. 2013); *see also Laffitte v. Robert Half Internat. Inc.*, 1 Cal. 5th 480, 483 (2016) (approving percentage of recovery measure of fees in common fund cases).  Therefore, should Plaintiffs prevail on this claim, attorneys' fees would amount to approximately **$5,602,212** (25% of **$22,408,850**).

44.     Based on the foregoing, Defendant alleges that the amount placed in controversy by Plaintiffs' class claims at the time of this removal (exclusive of interest and costs) is $22,011,062, which easily exceeds $5,000,000, based on reasonable assumptions.  As such, the amount in controversy necessary to support federal jurisdiction under the CAFA has been established.

## NONE OF THE CAFA EXCEPTIONS APPLY

45.     The CAFA statute includes a number of exceptions to its grant of original jurisdiction, contained in 28 U.S.C. §§ 1332(d)(3)–(5).  However, none of these exceptions are applicable here.

46. The first is a discretionary exception under which a Court may decline to exercise jurisdiction if more than one-third of the putative class members are citizens of the state in which the action was filed and the primary Defendant is a resident of that state. *See* 28 U.S.C. § 1332(d)(3). Here, of the 3,806 total putative class members, only 667 are California residents (approximately 18% of the total number of putative class members). Accordingly, *fewer than one-third* of the putative class members are California residents, and this discretionary exception does not apply. Similarly, the two exceptions under 28 U.S.C. § 1332(d)(4) also do not apply, because fewer than two-thirds of the putative class members are California residents.

47. Finally, 28 U.S.C. § 1332(d)(5) presents two additional exceptions for defendants who are government entities or putative classes which number less than 100 in the aggregate. *See* 28 U.S.C. §§ 1332(d)(5)(A)–(B). Given that Defendant is not a governmental entity, and the proposed class well exceeds 100 members, these exceptions also do not apply.

**THE COURT HAS SUPPLEMENTAL JURISDICTION UNDER 28 U.S.C. § 1367 OVER PLAINTIFFS' NON-CLASS PAGA CLAIMS**

48. Under 28 U.S.C. § 1367(a):

> Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

49. Here, the Court has supplemental jurisdiction over Plaintiffs' non-class PAGA claims, because those claims emanate from and form part of the same "case or controversy" as Plaintiffs' class claims, such that they should all be tried in one action. *See Nishimoto v. Federman-Backrach & Assoc.*, 903 F.2d 709, 714 (9th Cir. 1990). Plaintiffs' PAGA claims seek to recover civil penalties arising from the same exact alleged wage and hour violations alleged in Plaintiffs' class claims (FAC ¶ 89). *See Thompson v. Target Corp.*, 2016 WL 4119937, at *12 (C.D. Cal. 2016) ("Plaintiff's PAGA and class claims concern the same misconduct by Defendant and the PAGA claims are therefore properly within the Court's supplemental jurisdiction."). Considerations

of convenience, judicial economy, and fairness to the litigants strongly favor this Court exercising jurisdiction over all claims pleaded in the FAC. *See Executive Software v. U.S. Dist. Court*, 24 F.3d 1545, 1557 (9th Cir. 1994); *see also Pinnock v. Solana Beach Do It Yourself Dog Wash, Inc.*, 2007 WL 1989635, at *3 (S.D. Cal. 2007).

50. None of the exceptions to supplemental jurisdiction found in 28 U.S.C. § 1332(c) are applicable to this case. Plaintiffs' PAGA claims do not raise novel or complex issues of state law different from the class claims, they do not substantially predominate over the named Plaintiffs' individual claims, the class claims have not been dismissed, and there are no exceptional circumstances or compelling reasons for declining jurisdiction. The exceptions enumerated in 28 U.S.C. § 1332(c) are the exclusive grounds under which the Court may decline to exercise supplemental jurisdiction. *Exec. Software N. Am. v. United States Dist. Court*, 24 F.3d 1545, 1556 (9th Cir. 1994).

51. For these reasons the Court has supplemental jurisdiction over Plaintiffs' PAGA claims alleged in the FAC.

### TIMELINESS OF REMOVAL

52. Under 28 U.S.C. § 1446(b), there are "two thirty-day windows during which a case may be removed—during the first thirty days after the defendant receives the initial pleading or during the first thirty days after the defendant receives a paper 'from which it may first be ascertained that the case is one which is or has become removable' if 'the case stated by the initial pleading is not removable.'" *Harris v. Bankers Life & Cas. Co.*, 425 F.3d 689, 692 (9th Cir. 2005).

53. When a pleading or paper is "indeterminate," a defendant is under no duty to investigate the facts showing the basis for removal, and the 28 U.S.C. § 1446(b) 30-day windows do not begin to run. *Id.* at 692–95. "[N]otice of removability under § 1446(b) is determined through examination of the four corners of the applicable pleadings, not through subjective knowledge or a duty to make further inquiry." *Id.* at 694. This reasoning was confirmed in *Roth v. CHA Hollywood Med. Ctr., L.P.*, 720 F.3d 1121, 1125 (9th Cir. 2013): "Even if a defendant could have discovered grounds for removability through investigation, it does not lose the right to remove because it did

not conduct such an investigation and then file a notice of removal within thirty days of receiving the indeterminate document."

54. It is well-settled that a pleading or paper that discloses grounds to remove on a basis other than CAFA does not start any deadline to remove under the jurisdiction conferred by CAFA. *See Kenny v. Wal-Mart Stores*, 881 F.3d 786, 791 (9th Cir. 2018) ("These general removal principles apply equally in the context of removals premised upon CAFA . . . 'a defendant may remove a case from state court within thirty days of ascertaining that the action is removable under CAFA, even if an earlier pleading, document, motion, order, or other paper revealed an alternative basis for federal jurisdiction.'") (quoting *Jordan v. Nationstar Mortg. LLC*, 781 F.3d 1178, 1180 (9th Cir. 2015)); *see also Castro v. ABM Industries, Inc.*, 2017 WL 4682816, at *3 (N.D. Cal. Oct. 19, 2017) (finding that defendant timely removed upon learning the amount in controversy was over $5 million from plaintiff's trial plan). *Jordan* also confirms that CAFA must be construed liberally in favor of removal. *Id.* at 1183–84.

55. *Roth* holds that the two 30-day windows in 28 U.S.C. § 1446(b) are not the exclusive times in which a defendant can remove. Thus, if a defendant never receives a pleading or other paper affirmatively disclosing the grounds for removal under CAFA, the defendant can remove under CAFA at any time. *Roth*, 720 F.3d at 1126 ("A CAFA case may be removed at any time, provided that neither of the two 30-day periods under § 1446(b)(1) and (b)(3) has been triggered."); *see also Kenny v. Wal-Mart Stores, Inc.*, 881 F.3d 786, 791 (9th Cir. 2018) ("[W]e will not 'charge defendants with notice of removability until [they have] received a paper that gives them enough information to remove'"); *see also Rea v. Michaels Stores Inc.*, 742 F.3d 1234, 1238 (9th Cir. 2014) ("[A]s long as the complaint or 'an amended pleading, motion, order or other paper' does not reveal that the case is removable, the 30-day time period never starts to run and the defendant may remove at any time.").

56. The only papers that start the second 30-day window under 28 U.S.C. § 1446(b) are those received from other parties in the litigation. *Calkins v. Google, Inc.*, 2013 WL 3556042, at *3 (N.D. Cal. 2013) ("[T]he plain language of the statute is clear that 'other paper' refers to a document received from another person or party in connection with the litigation."); *see also Graiser v.*

*Visionworks of Am., Inc.*, 819 F.3d 277, 284 (6th Cir. 2016) ("Every circuit to have addressed this issue has . . . adopted some form of a bright-line rule that limits the court's inquiry to the clock-triggering pleading or other paper provided *by the plaintiff* to the defendant.") (original emphasis). That a defendant can discern or has discerned removability from its own records does not begin either of the non-exclusive 30-day windows for removal. *See Roth*, 720 F.3d at 1126; *see also Jakuttis v. Allstate Indem. Co.*, 2015 WL 3442083, at *4 (C.D. Cal., 2015) ("The crux of Plaintiff's argument for remand—that Defendant could have removed earlier based on information contained in its own records—is thus contradicted by Ninth Circuit case law.") The Ninth Circuit in *Harris*, 425 F.3d at 495, adopted the following rule from the Fourth Circuit: "We will not require courts to inquire into the subjective knowledge of the defendant, an inquiry that could degenerate into a mini-trial regarding who knew what and when. Rather, we will allow the court to rely on the face of the initial pleading and on the documents <u>exchanged in the case by the parties</u> to determine when the defendant had notice of the grounds for removal, requiring that those grounds be apparent within the four corners of the initial pleading or subsequent paper." (quoting *Lovern v. GMC*, 121 F.3d 160, 162 (4th Cir. 1997)) (emphasis added).

57. None of Plaintiffs' pleadings in this action, nor any other paper which Plaintiffs served or delivered to Defendant, affirmatively disclosed a ground for CAFA removal. At most, the FAC alleges that the putative class could recover up to a maximum of $4,000 per putative class member in wage statement penalties, although Plaintiff does not actually assert a violation rate or the number of putative class members entitled to wages statement penalties. (FAC, ¶¶ 68–70). Thus, Defendant never received any pleading, motion, order, or other paper from Plaintiffs or the Alameda Superior Court affirmatively disclosing that the amount in controversy in this action exceeds $5,000,000. Accordingly, the second 30-day window under 28 U.S.C. § 1446(b) has not yet started, and for the foregoing reasons, this notice of removal is timely and otherwise procedurally proper.

## **VENUE**

58.  Venue lies in the Northern District of California pursuant to 28 U.S.C. §§ 1441, 1446(a), and 84(c)(2).  This action originally was brought in the Superior Court of the State of California, County of Alameda.

## **NOTICE OF REMOVAL**

59.  This Notice of Removal will be promptly served on Plaintiffs and filed with the Clerk of the Superior Court of the State of California in and for the County of Alameda.

60.  In compliance with 28 U.S.C. § 1446(a), true and correct copies of all "process, pleadings and orders" from the state court action served on Defendant or filed by Defendant are attached hereto as the following exhibits, including the Complaint **(Exhibit A)**; Summons **(Exhibit B)**; Civil Case Cover Sheet **(Exhibit C)**; Notice of Case Management Conference **(Exhibit D)**; Defendant's Answer to Plaintiffs' Complaint **(Exhibit E)**; Stipulation, Order, and Proof of Service **(Exhibits F-H)**; FAC **(Exhibit I)**; Order from the Complex Determination Hearing **(Exhibit J)**; Initial Case Management Order **(Exhibit K)**; Defendant's Peremptory Strike **(Exhibit L)**; Notice of Case Reassignment **(Exhibit M)** and Answer to Plaintiffs' FAC **(Exhibit N)**.

61.  Because this Court has original jurisdiction under CAFA, 28 U.S.C. §§ 1332(d)(2), removal of this action is proper pursuant to 28 U.S.C. §§ 1332(d)(2), 1441, 1446 and 1453.

## **JOINDER**

62.  Defendant is not aware of any other defendant that exists and who has been named in the FAC.

## **RESERVATION OF RIGHTS**

63.  This Notice of Removal is filed subject to and with full reservation of all rights, including but not limited to defenses and objections to venue, improper service, and personal jurisdiction.  Defendant also reserves its right to file a Motion to Compel Arbitration.  No admissions are intended hereby as to the propriety of liability or damages with respect to any aspect of this case, and all defenses, motions, and pleas are expressly reserved.

WHEREFORE, Defendant requests the above action pending before the Superior Court of the State of California for the County of Alameda be removed as required by the CAFA to the United States District Court for the Northern District of California.

Dated: April 19, 2022

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By  /s/ *Amanda E. Beckwith*
PAUL S. COWIE
BRIAN S. FONG
AMANDA E. BECKWITH
VICTORIA B. AYENI

Attorneys for Defendant HEALTHSOURCE GLOBAL STAFFING, INC.