UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PATRICIA LOUIS, et al.,<br><br>        Plaintiffs,<br><br>   v.<br><br>HEALTHSOURCE GLOBAL STAFFING, INC.,<br><br>        Defendant. | Case No. 22-cv-02436-JD<br><br>**ORDER RE REMAND** |

Named plaintiffs Patricia Louis and Morgan Murray, on behalf of a putative class of "strikebreakers" hired to work on short-term assignments during labor disputes, have sued Healthsource Global Staffing, Inc. for a variety of wage and hour claims under California law. Plaintiffs filed this action in the Alameda County Superior Court in December 2021, Dkt. No. 1-2, Ex. A, and filed an amended complaint on March 15, 2022, Dkt. No. 1-2, Ex. I (FAC). On April 19, 2022, Healthsource removed the case to federal court under the Class Action Fairness Act of 2005 (CAFA), 28 U.S.C. § 1332(d). Dkt. No. 1. Plaintiffs filed a motion to remand on the grounds that Healthsource has not plausibly established the $5 million amount in controversy required for CAFA jurisdiction and that removal was not timely. Dkt. No. 20-1. The parties' familiarity with the record is assumed, and a remand is denied.

**DISCUSSION**

The Court has detailed the standards of CAFA removal in other cases, and incorporates those discussions here. *See Anderson v. Starbucks Corp.*, 556 F. Supp. 3d 1132, 1135-37 (N.D. Cal. 2020); *Moore v. Dnata Inflight Catering LLC*, Case No. 20-cv-08028-JD, 2021 WL 3033577 (N.D. Cal. July 19, 2021); *Duran v. Allegis Glob. Sols., Inc.*, No. 20-cv-09025-JD, 2021 WL

3281073 (N.D. Cal. Aug. 2, 2021). Specific portions of the standards are stated in the ensuing discussion as pertinent, but the overall standards presented in those cases apply here.

### I. AMOUNT IN CONTROVERSY

Plaintiffs' lead argument is that Healthsource "was legally required to provide evidence in support of its estimated amount in controversy *at that time of removal*." See Dkt. No. 20-1 at 4-6 (emphasis in original). The law says otherwise. "A defendant's notice of removal 'need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold,' and does not need evidentiary submissions." *Anderson*, 556 F. Supp. 3d. at 1136 (quoting *Sharpe v. Puritan's Pride, Inc.*, No. 16-cv-06717-JD, 2017 WL 475662, at *2 (N.D. Cal. Feb. 6, 2017)). Healthsource bore the burden of establishing the amount in controversy by a preponderance of the evidence only after plaintiffs factually attacked its estimates. *See id.*; Dkt. No. 20-1 at 6-8.

Healthsource has met this evidentiary burden because it has established that the claim under California Labor Code Section 203 alone puts more than $18 million in controversy. *See* Dkt. No. 21 at 9-11. Section 203 imposes a waiting time penalty equal to one day of pay for each day wages are late, up to a maximum of 30 days for an employer's failure to pay all wages owed to the employee immediately upon the employee's separation. *See* Cal. Lab. Code §§ 201-03; *see also Collins v. Hilton Mgmt., LLC*, No. 21-cv-02523-JD, 2021 WL 2981977, at *3 (N.D. Cal. July 15, 2021).

To estimate its potentially liability for this claim, Healthsource determined that there are 3,608 putative class members, and that they worked 2,260 separate assignments during the applicable recovery period. Dkt. No. 21-1 ¶¶ 7, 12. It also determined that putative class members during the class period earned an average of $1,120 per day. *Id.* ¶ 10. Assuming a 25% violation rate, it estimated approximately $18,984,000 in waiting time penalties. Dkt. No. 1 ¶ 32 ("$1,120 per day x 30 days x 2,260 total assignments worked x 25%"); Dkt. No. 21 at 10-11. Healthsource's estimates regarding the number of separate assignments and the average daily pay are grounded in its business records and supported by a declaration filed by the individual responsible for primary oversight and management of Healthsource. *See* Dkt. No. 21-1 ¶¶ 1, 10, 12.

2

1	Plaintiffs do not dispute these numbers, and nothing in the record indicates that they are
2	unreliable. Healthsource's assumption that it could be liable for the maximum thirty-day penalty
3	for each Section 203 violation was not an inflationary tactic. To be sure, assuming a 100%
4	liability or violation rate is not necessarily warranted in every case. *See Moore*, 2021 WL
5	3033577, at *2 (allegations that "some class members suffered some violations at some time
6	during the class period," and "the occasional reference to a 'common course of conduct' and
7	'intentionally' adopted wage and hour policies," were "hardly grounds to infer a 100% violation
8	rate for any of the claims"). But the FAC alleges that Healthsource "failed to pay *all* wages due to
9	Plaintiffs and other members of the Class who separated from Defendant, by failing to pay for,
10	among other things, for *all* hours worked and *all* wages earned, including overtime and double-
11	time pay and non-discretionary bonuses." FAC ¶ 75 (emphasis added). Plaintiffs themselves
12	posit a uniform pattern and practice of violations by Healthsource, and so the maximum penalty
13	assumption used to determine the amount in controversy is reasonable. *See Anderson*, 556 F.
14	Supp. 3d at 1137-38 (allegations that "all" class members "expected and required" to be reachable
15	by phone "at any time" were grounds to infer a 100% violation rate); *see also Arias v. Residence*
16	*Inn by Marriott*, 936 F.3d 920, 927 (9th Cir. 2019) ("the amount in controversy reflects the
17	*maximum* recovery the plaintiff could reasonably recover") (emphasis in original).
18	Even so, Healthsource ultimately used a much lower assumption of a 25% violation rate to
19	estimate the amount in controversy, and demonstrated that the statutory threshold would still be
20	met even assuming a 10% violation rate. Dkt. No. 21 at 11 n.8; *see Collins*, 2021 WL 2981977, at
21	*2 (25% violation rate was reasonable where complaint alleged that violations occurred
22	"systematically" and on a "uniform" basis). Healthsource did not rig the estimate, as plaintiffs
23	suggest.
24	Plaintiffs say that the FAC is "completely silent as to how many putative class members
25	have also separated" from Healthsource. Dkt. No. 20-1 at 6-7. But as Healthsource stated, with
26	no meaningful opposition by plaintiffs, the FAC is plausibly read as alleging that each separate
27	assignment worked constituted a potential waiting time penalties claim. Although the FAC
28	alleged that plaintiffs Louis and Murray "no longer work[] for Defendant" and "have separated

United States District Court
Northern District of California

from Defendant as a result of being discharged or having voluntarily resigned their employment," Healthsource's business records indicate that neither Louis nor Murray has separated from Healthsource via discharge, resignation, or otherwise. FAC ¶¶ 12, 14, 74; Dkt. No. 21-1 ¶ 14. It was consequently reasonable for Healthsource to construe plaintiffs' theory of recovery as "a claim that each assignment worked represents a separate employment, requiring the payment of final wages." Dkt. No. 21 at 10; *see also Smith v. Super. Ct.*, 137 P.3d 218, 220 (Cal. 2006) ("discharged" employees under Cal. Lab. Code § 201 include employees released after "completion of a specific job assignment or time duration for which the employee was hired"). There is no doubt that Healthsource has plausibly established that it is reasonably possible that the amount in controversy exceeds $5 million on this claim alone, and plaintiffs have not shown otherwise.

In light of this record, plaintiffs' other objections to Healthsource's estimates need not be considered because they do not materially change the demonstration of the amount in controversy. Plaintiffs were not entirely forthright in raising some of these criticisms. Several were presented for the first time in a reply brief, on the apparent belief that plaintiffs were entitled to do so. Dkt. No. 20-1 at 1 n.1; *see also* Dkt. No. 22 at 6-9, 11-12 (reply brief). That is not the case. Paragraph 15 of the Court's Standing Order for Civil Cases expressly bars raising new arguments in a reply, to avoid sandbagging and other inequitable conduct. *See In re Capacitors Antitrust Litig.*, No. 14-cv-03264-JD, 2017 WL 897340, at *1 (N.D. Cal. Mar. 7, 2017); *see also Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007) (the Court "need not consider arguments raised for the first time in a reply brief"). In any event, the Court has independently reviewed the late objections, and they do not alter the conclusion that the statutory amount in controversy has been demonstrated.

**II.    TIMELINESS**

Plaintiffs' suggestion that removal was untimely under 28 U.S.C. § 1446(b) is not well taken. Dkt. No. 20-1 at 8-10. Sections 1446(b)(1) and (b)(3) of the removal statute require "that a notice of removal be filed within thirty days of receipt from the plaintiff of an initial pleading or other document from which it is ascertainable that the case is removable." *Roth v. CHA Hollywood Med. Ctr., L.P.*, 720 F.3d 1121, 1124 (9th Cir. 2013). The two thirty-day periods

4

"operate as limitations on the right to removal rather than as authorizations to remove," and only apply to "a defendant who is put on notice of removability by a plaintiff." *Id.* at 1123, 1125. Otherwise, "[a] CAFA case may be removed at any time." *Id.* at 1126.

"[N]otice of removability under § 1446(b) is determined through examination of the four corners of the applicable pleadings, not through subjective knowledge or a duty to make further inquiry." *Harris v. Bankers Life & Cas. Co.*, 425 F.3d 689, 694 (9th Cir. 2005). Under the Ninth Circuit's "bright-line approach," the thirty-day clocks start when removability is "revealed affirmatively in the initial pleading" or made "unequivocally clear and certain" by another paper. *Id.* at 695, 697; *Dietrich v. Boeing Co.*, 14 F.4th 1089, 1091 (9th Cir. 2021). Consequently, "even if a defendant could have discovered grounds for removability through investigation, it does not lose the right to remove because it did not conduct such an investigation and then file a notice of removal within thirty days of receiving the indeterminate document." *Kenny v. Wal-Mart Stores, Inc.*, 881 F.3d 786, 791 (9th Cir. 2018) (quoting *Roth*, 720 F.3d at 1125); *see also Fowler v. Penske Logistics, LLC*, No. 3:17-cv-05397-JD, 2018 WL 2079987, at *1 (N.D. Cal. May 4, 2018) (thirty-day removal periods not triggered when "defendant would have had to review its records in order to calculate potential damages" because "[c]ircuit precedent makes clear that such reviews are not required by the removal statute") (internal quotations omitted); *Anderson*, 556 F. Supp. 3d at 1135, 1137 (removal was timely where defendant filed notice of removal eight months after the complaint was filed but "within thirty days of ascertaining that the action is removable under CAFA").

Neither the initial complaint nor the FAC affirmatively disclosed the potential size of the putative class or the amount in controversy, and plaintiffs do not point to any other pleading or document that would have triggered the question of removal. Healthsource could not have made those calculations without reviewing its own business records to establish the likely number of putative class members, the number of assignments worked, and the average daily pay. The thirty-day limits in Section 1446(b) are consequently inapplicable, and it was proper for Healthsource to remove "at any time." *Roth*, 720 F.3d at 1126.

**CONCLUSION**

Removal was timely and provident under the removal statute.  Consequently, a remand is denied.

**IT IS SO ORDERED.**

Dated:  October 3, 2022

JAMES DONATO
United States District Judge